UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MARK TIEDE,<br><br>    Plaintiff,<br>    Counterclaim Defendant,<br><br>    v.<br><br>SENECA SPECIALTY INSURANCE COMPANY,<br><br>    Defendant,<br>    Counterclaimant. | \*<br>\*<br>\*<br>\*<br>\*<br>\*   Civil Action No. 17-cv-10074-ADB<br>\*<br>\*<br>\*<br>\*<br>\* |

**MEMORANDUM AND ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT**

BURROUGHS, D.J.

Plaintiff Mark Tiede claims that, in March 2010, he was assaulted by two bouncers working at James Joyce, Inc. d/b/a Kitty O'Shea's ("Kitty O'Shea's"), an Irish tavern in Boston. [ECF No. 7 ("Amended Complaint" or "Am. Compl.") ¶ 4]. He sued Kitty O'Shea's for the assault, and on December 6, 2011, obtained a default judgment for $160,000, plus interest. On January 17, 2017, having been unable to collect from Kitty O'Shea's, Tiede filed this action against Kitty O'Shea's insurer, Seneca Specialty Insurance Company ("Seneca"). Tiede brings claims against Seneca for unfair and deceptive practices in violation of Massachusetts Chapters 93A and 176D (Count I), as a third-party beneficiary and injured claimant pursuant to the insurance policy (Count II), and to "reach and apply" the insurance policy to his default judgment pursuant to Massachusetts Chapter 175, Sections 112 and 113, and Chapter 214, Section 3(9) (Count III). See generally Am. Compl. Seneca brings one counterclaim for declaratory relief and requests a declaration that Seneca is not liable under the insurance policy issued to Kitty O'Shea's. [ECF No. 10 at 21]. Before the Court are Seneca's Motion for

Summary Judgment, [ECF No. 26], and Tiede's Cross Motion for Summary Judgment, [ECF No. 36]. For the reasons discussed below, Seneca's motion is GRANTED and Tiede's motion is DENIED.

## I. FACTS[1]

Seneca issued an insurance policy to Kitty O'Shea's that was effective from February 11, 2010 to February 11, 2011. Seneca Facts ¶ 1. The policy covered *inter alia* sums that Kitty O'Shea's became obligated to pay for "bodily injury." Id. ¶ 2. The policy also provided:

> If a claim is made or "suit" is brought against any insured, you must:
> (1) Immediately record the specifics of the claim or "suit" and the date received; and
> (2) Notify us as soon as practicable.
> You must see to it that we receive written notice of the claim or "suit" as soon as practicable.
> You and any other involved insured must:
> (1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit."

Id. The policy defined "you" and "your" as "the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy." Tiede Facts ¶¶ 29–31; [see also ECF No. 37-1].

Tiede claims that on the evening of March 20, 2010, for no apparent reason, two bouncers employed by Kitty O'Shea's dragged him out of the tavern and repeatedly punched him in the face and head. Seneca Facts ¶ 3. On December 29, 2010, Tiede's attorney, Charles Pappas, asked Kitty O'Shea's to put its insurance carrier on notice of Tiede's claim. Id. ¶ 4. Kitty O'Shea's notified its insurance broker, which in turn notified Seneca about the incident involving Mr. Tiede. Id. ¶¶ 5–6. On February 8, 2011, Seneca acknowledged the claim and

---

[1] The following facts are drawn from Tiede's and Seneca's statements of undisputed material facts and from the exhibits to those statements. [ECF No. 28 ("Seneca Facts"); ECF No. 37 at 30–31 ("Tiede Facts")].

2

informed Kitty O'Shea's that it was undertaking an investigation under a reservation of rights. Id. ¶¶ 8, 17. On February 17, 2011, Seneca also wrote to Attorney Pappas and informed him that Seneca had received his December 29, 2010 letter of representation and was investigating the claim. Id. ¶ 10. Seneca contracted Mark Adjustment Service, Inc. ("Mark Adjustment") to conduct the investigation. Id. ¶¶ 19–21. Mark Adjustment interviewed witnesses, spoke to Tiede's attorneys about his version of events, and then produced a 12-page initial report. Id. ¶¶ 21, 29. The report indicates that Kitty O'Shea's management denied that any of their employees had assaulted Tiede and found weaknesses in the facts asserted by a friend of Tiede's who was present on the night in question. Id. ¶ 21; [see generally ECF No. 28-15]. The report concluded that a lawsuit "may be the only way the true facts will come out." [ECF No. 28-15 at 10].

On February 14, 2011, Tiede filed a lawsuit against Kitty O'Shea's in Worcester Superior Court ("Superior Court"). Seneca Facts ¶ 9. Tiede's attorneys claim that they informed Seneca that they had filed suit in February 2011, and that they also informed Karen Downing of Mark Adjustment that they had filed the lawsuit. ECF No. 37 at 6; Tiede Facts ¶ 16. Additionally, the report prepared by Mark Adjustment shows that as of March 1, 2011, Kitty O'Shea's believed that Tiede was planning to or had filed suit, but that it had not been served with the complaint or summons. Seneca Facts ¶ 22.[2]

On April 23, 2011, Tiede served Kitty O'Shea's registered agent, Thomas Medaglia, Jr., with the complaint and summons. Id. ¶ 32. Mr. Medaglia did not pass the complaint and summons along to Kitty O'Shea's management or to Seneca, and Tiede did not inform Seneca

---

[2] It appears from the report that although Tiede had already filed a lawsuit, his attorneys, Joseph Mahaney and Charles Pappas, led Mark Consulting to believe that they had not, as of early March 2011, filed a lawsuit. [ECF No. 28-15 at 8–10]. Attorneys Mahaney and Pappas dispute this. [ECF No. 37 at 9–10 (disputing the accuracy of the Mark Adjustment initial report)].

3

that it had served Kitty O'Shea's or send Seneca a copy of the complaint.  Id. ¶¶ 27–28, 33–34.  On June 16, 2011, the Superior Court entered a default against Kitty O'Shea's.  Id. ¶ 36.  Tiede did not notify Seneca that he had obtained the default against Kitty O'Shea's.  Id. ¶¶ 37–38.  On October 5, 2011, Tiede filed a Motion for an Assessment of Damages Hearing and entry of a Final Judgment against Kitty O'Shea's.  Id. ¶ 39.  On November 17, 2011, Tiede served Kitty O'Shea's registered agent and Kitty O'Shea's officers with his Motion for an Assessment of Damages Hearing and informed them of the assessment of damages hearing scheduled for November 29, 2011 before the Worcester Superior Court.  Id. ¶ 40.  Tiede did not notify Seneca of the hearing.  Id. ¶ 41.

Attorney Mahaney appeared at the hearing for Tiede and was asked by Judge McCann if an insurer was involved in the matter.  Id. ¶¶ 42–43.  Mahaney replied—despite the February and March 2011 communications between Tiede's attorneys and Seneca—that he "had not heard and was surprised."  Id. ¶ 44.  On Friday, December 2, 2011, Seneca received notice of the assessment of damages hearing from Kitty O'Shea's insurance agent, and responded by retaining counsel "to attempt to vacate the default judgment and the assessment."  Tiede Facts ¶ 39.  On December 6, 2011, the Superior Court assessed damages against Kitty O'Shea's in the amount of $160,000.  Seneca Facts ¶ 46.

On December 12, 2011, Seneca informed Kitty O'Shea's that it had received its first notice about service of the complaint, had retained counsel, and would proceed under a continuing reservation of its rights.  Id. ¶ 48.  On April 13, 2012, an attorney for Seneca filed a motion to vacate the default judgment on behalf of Kitty O'Shea's.  Id. ¶ 52.  Seneca determined in May 2012 that it would deny coverage if Kitty O'Shea's was unable to vacate the default, and recognized that further litigation had little to no chance of success.  Tiede Facts ¶¶ 61–64.  Tiede

4

successfully opposed the motion to vacate, and an execution on the judgment was issued on July 11, 2012. Seneca Facts ¶¶ 53–55.

On August 27, 2012, Kitty O'Shea's filed a motion for reconsideration, which the Superior Court denied on October 2, 2012. See Tiede v. James Joyce, Inc., No. 13–P–136, 2013 WL 6633811, at *1, 999 N.E.2d 503 (Table) (Mass App. Ct. 2013). Kitty O'Shea's then filed an appeal, and on December 18, 2013, the Appeals Court found that the Superior Court judge had not abused her discretion in declining to vacate the default. Id. On February 3, 2014, the Supreme Judicial Court ("SJC") denied further appellate review. Tiede v. James Joyce, Inc., 3 N.E.3d 81 (Table) (Mass. 2014); see also Seneca Facts ¶¶ 57–65. The day after the SJC denied further review, Seneca notified Kitty O'Shea's and Tiede that it was denying coverage. Seneca Facts ¶¶ 66–67.

On June 3, 2013, during the pendency of Seneca's appeal attempts, Kitty O'Shea's assets were sold. Tiede Facts ¶ 81. Tiede's attorneys attest that, if Seneca had provided Tiede with a statement that coverage was being denied earlier, they would have pursued attachment of Kitty O'Shea's assets. Id. ¶ 83. Although the default judgment currently has a nominal value in excess of $350,000, Seneca has not offered more than $20,000 to Tiede to settle his claims. Tiede Facts ¶ 92.

## II. STANDARD OF REVIEW

Summary judgment is appropriate where the movant can show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is material if its resolution might affect the outcome of the case under the controlling law." Cochran v. Quest Software, Inc., 328 F.3d 1, 6 (1st Cir. 2003) (citation

5

omitted). "A genuine issue exists as to such a fact if there is evidence from which a reasonable trier could decide the fact either way." Id. (citation omitted).

"To succeed in showing that there is no genuine dispute of material fact," the moving party must point to "specific evidence in the record that would be admissible at trial." Ocasio-Hernandez v. Fortuño-Burset, 777 F.3d 1, 4 (1st Cir. 2015). "That is, it must 'affirmatively produce evidence that negates an essential element of the non-moving party's claim,' or, using 'evidentiary materials already on file . . . demonstrate that the non-moving party will be unable to carry its burden of persuasion at trial.'" Id. (quoting Carmona v. Toledo, 215 F.3d 124, 132 (1st Cir. 2000)). "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses . . . ." Celotex Corp. v. Catrett, 477 U.S. 317, 323–24 (1986). Once the movant takes the position that the record fails to make out any trialworthy question of material fact, "it is the burden of the nonmoving party to proffer facts sufficient to rebut the movant's assertions." Nansamba v. No. Shore Med. Ctr., Inc., 727 F.3d 33, 40 (1st Cir. 2013).

In reviewing the record, the Court "must take the evidence in the light most flattering to the party opposing summary judgment, indulging all reasonable inferences in that party's favor." Cochran, 328 F.3d at 6 (citation omitted). The First Circuit has noted that this standard "is favorable to the nonmoving party, but it does not give him a free pass to trial." Hannon v. Beard, 645 F.3d 45, 48 (1st Cir. 2011). "The factual conflicts upon which he relies must be both genuine and material," Gomez v. Stop & Shop Supermarket Co., 670 F.3d 395, 397 (1st Cir. 2012), and the Court may discount "conclusory allegations, improbable inferences, and unsupported speculation," Cochran, 328 F.3d at 6 (quoting Medina-Munoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990)). "If the evidence is merely colorable, or is not

significantly probative, summary judgment may be granted." Medina-Munoz, 896 F.2d at 8 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249–50 (1986)).

The interpretation of an insurance policy is a question of law, and "[w]hen the relevant facts upon which coverage of a claim is premised are not in dispute, the application of the insurance policy to those facts is also a question of law that can be resolved on summary judgment." Amtrol, Inc. v. Tudor Ins. Co., No. 01-cv-10461-DPW, 2002 WL 31194863, at *4 (D. Mass. Sept. 10, 2002); see also Ruggerio Ambulance Serv. v. National Grange Ins. Co., 430 Mass. 794, 797 (2000).

## III. DISCUSSION

Massachusetts statutory law allows Tiede, as a judgment creditor of Kitty O'Shea's, to "reach and apply" the proceeds of Kitty O'Shea's insurance policy "to the extent it embraces covered claims." Palermo v. Fireman's Fund Ins. Co., 676 N.E.2d 1158, 1164 (Mass. App. Ct. 1997) (citing Mass. Gen. Laws ch. 174, §§ 112–113 and ch. 214, § 3). Tiede also claims that he may recover as a third-party beneficiary of the insurance policy.[3] For the purposes of these claims, Tiede "derivatively stands in the shoes of [Kitty O'Shea's]," id. at 1164, and his claims

---

[3] "Under Massachusetts law, only intended beneficiaries, not incidental beneficiaries, can enforce a contract." Harvard Law Sch. Coalition for Civil Rights v. President & Fellows of Harvard College, 595 N.E.2d 316 (Mass. 1992). "It must appear from 'the language and the circumstances of the contract' that the parties to the contract 'clearly and definitely' intended the beneficiaries to benefit from the promised performance." Miller v. Mooney, 725 N.E.2d 545 (Mass. 2000) (quoting Anderson v. Fox Hill Village Homeowners Corp., 676 N.E.2d 821, 822 (Mass. 1997)). Tiede argues that "[a]s a judgment creditor to whom [Kitty O'Shea's] had become legally obligated to pay, [he] also became an intended [third-party] beneficiary of Seneca's policy, and as [a] result was entitled to the benefits of the Policy as if he were an insured." [ECF No. 38 at 16]. The Court has not been asked to address whether Tiede was an intended third-party beneficiary with respect to his bodily injury prior to the default. As discussed infra, the Court concludes that the insurance policy did not obligate Seneca to reimburse Kitty O'Shea's for the default judgment, and the Court therefore concludes that Tiede cannot collect the default judgment regardless of whether he is an intended third-party beneficiary under the policy.

7

are "subject to any defenses available to [Seneca] against [Kitty O'Shea's]," Morse v. Emp'rs' Liab. Assur. Corp., 323 N.E.2d 769, 769 (Mass. App. Ct. 1975), overruled in part by Johnson Controls, Inc. v. Bowes, 409 N.E.2d 185, 188 (Mass. 1980); see also Campione v. Wilson, 661 N.E.2d 658, 664 (Mass. 1996) ("[D]efendants may raise against [plaintiffs] any defense they would have had against a claim by [the insured].").

Seneca argues that summary judgment should be granted because Kitty O'Shea's failed to timely notify Seneca of Tiede's suit as required by the insurance policy and Seneca suffered actual prejudice as a result, thereby voiding its obligation to provide coverage under the policy and eliminating Tiede's ability to reach and apply the policy to his default. [ECF No. 27 at 2–12]. Seneca further argues that Tiede also cannot succeed on his Chapter 93A and 176D claims, as it was not obligated under the policy to effectuate a settlement or to explain its denial of coverage to Tiede. Id. at 12–20.

### A. Because Seneca Has Proven that Kitty O'Shea's Breached the Insurance Policy's Notice Provision and that Seneca Suffered Actual Prejudice as a Result, Summary Judgment Is <u>GRANTED</u> in Favor of Seneca on Tiede's Contract Claims (Count II).

An insurance company that claims it is not obligated to provide coverage on grounds of untimely notice of a claim or suit is required "to prove both that the notice provision was in fact breached and that the breach resulted in prejudice to its position." Johnson Controls, Inc., 409 N.E.2d at 188; see also Darcy v. Hartford Ins. Co., 554 N.E.2d 28, 33 (Mass. 1990) (noting that an insurer is permitted to "disclaim coverage because of an insured's breach of the notice . . . provision[] in a policy only if the insurer [can] prove that any such breach actually prejudiced its position"). As the SJC "later paraphrased it, . . . 'a violation of a policy provision should bar coverage only where the breach frustrates the purpose underlying [the notice] provision.'" Boyle v. Zurich Am. Ins. Co., 36 N.E.3d 1229, 1236 (Mass. 2015) (quoting Augat, Inc. v. Liberty Mut.

8

Ins. Co., 571 N.E.2d 357 (Mass. 1991)). "Notice requirements are intended to permit the insurer to undertake a 'seasonable investigation of the facts relating to liability,' so that it may preserve 'an opportunity to defend effectively.'" Id. at 1237 (quoting Johnson Controls, 409 N.E.2d at 187). Additionally, the requirement that the insured provide "summonses or legal papers received," see Seneca Facts ¶ 2, is intended to allow the insurer to effectively defend lawsuits brought against its insured.

Summary judgment may be appropriate where an insurer receives notice of a claim only when there is "nothing left for the insurer to do but issue a check" because such notice is "too late for the insurer to act to protect its interests." Myers v. The Travelers Indem. Co., No. CA 11-40157-TSH, 2014 WL 1330841, at *7 (D. Mass. Mar. 27, 2014); see also Augat, 571 N.E.2d at 361 (holding that insurer was not obligated to reimburse insured for a consent judgment, where the only pre-judgment notice the insured sent the insurer was a letter notifying it of a situation that may give rise to a claim).[4] An insurer may not, however, disclaim liability where it learns of a lawsuit when no default judgment has entered and there is still ample opportunity to litigate, but its insured did not comply with the notice requirements. Even where the notice is drastically late, the insurer owes its insured "diligence and good faith" in defending the suit. See Darcy, 554 N.E.2d at 34 (holding insurer liable for a default judgment where its insured did not

---

[4] Augat, Inc. v Liberty Mutual Insurance Company, 571 N.E.2d 357, found that no showing of prejudice was required where the court relied on the relevant insurance policy's exclusion of obligations that were incurred voluntarily. Its holding does not dictate that no showing of prejudice is required in cases where failure to comply with a notice provision leads to a default judgment.

9

send timely notice, but the insurer nevertheless identified the lawsuit against its insured two years before the entry of default and yet did not appear to defend its insured).

Tiede first argues that, even where Seneca did not receive basic information about the lawsuit including the complaint, docket number, and knowledge of service until December 2011, summary judgment should be denied because Seneca "received timely notice of Mr. Tiede's claim and his lawsuit." [ECF No. 38 at 2]. There is no dispute that Seneca had received notice of Tiede's claim no later than February 2011, and then hired Mark Adjustment, which investigated and prepared a report. Seneca Facts ¶¶ 18–19; [see also ECF No. 28-15]. Although the Court must also credit the testimony of Tiede's attorneys that they informed Seneca that Tiede had filed a lawsuit against Kitty O'Shea's, Seneca was not informed that Kitty O'Shea's had been served, nor was it informed of the docket number or given a copy of the complaint.[5] In these circumstances, although Seneca had notice of Tiede's claim and was informed that a lawsuit had been filed, it did not have notice of his lawsuit sufficient to allow it to "defend effectively." Boyle, 36 N.E.3d at 1237. Because it lacked the information necessary to defend the lawsuit, Seneca could still be prejudiced by a breach of the insurance policy's notice requirements.

Tiede next argues that despite the April 2011 service of process on Kitty O'Shea's registered agent, Kitty O'Shea's did not breach the insurance policy's notice requirements because Kitty O'Shea's did not learn that it had been served until November 2011. [ECF No. 38 at 6–13]. Specifically, Tiede argues that under the terms of the insurance policy, because Kitty O'Shea's registered agent was not an "insured," service on the registered agent alone did not vest

---

[5] The record also strongly suggests that Tiede's attorneys made inconsistent statements about whether they had already filed suit or were planning to do so. [See ECF No. 28-15 at 8–10].

10

Kitty O'Shea's with knowledge of the lawsuit or trigger its obligation to send Seneca the summons and complaint. [ECF No. 38 at 8–13].[6] The Court must determine whether Kitty O'Shea's was obligated to notify Seneca of the lawsuit and send it the complaint and summons, given that its registered agent had been served, but its officers and employees remained unaware.

"The interpretation of language in an insurance contract 'is no different from the interpretation of any other contract, and [the Court] must construe the words of the policy in their usual and ordinary sense.'" Metro. Prop. & Cas. Ins. Co. v. Morrison, 951 N.E.2d 662, 671 (Mass. 2011) (quoting Bos. Gas Co. v. Century Indem. Co., 910 N.E.2d 290, 304 (Mass. 2009)). "Every word must be presumed to have been employed with a purpose and must be given meaning and effect whenever practicable." Id. (quotation marks and punctuation omitted). Coverage is determined based on "what an objectively reasonable insured, reading the relevant policy language, would expect to be covered." Id. (quoting A.W. Chesterton Co. v. Mass. Insurers Insolvency Fund, 838 N.E.2d 1237, 1250 (Mass. 2005). Ambiguous language is construed "in favor of the insured and against the drafter, who is invariably the insurer, unless specific policy language is controlled by statute or prescribed by another authority." Metro. Prop. & Cas. Ins. Co., 951 N.E.2d at 671 (citing Mass. Insurers Insolvency Fund v. Smith, 940 N.E.2d 385, 388 (Mass. 2010)).

The policy requires that, if a suit is brought against any insured, "You must see to it that we receive written notice of the claim or 'suit' as soon as practicable." [ECF No. 28-4 at 14]. The policy also requires "You" to "Immediately send us copies of any . . . summonses or legal

---

[6] In further support of this argument, Tiede argues that Seneca has acknowledged that the relevant question is whether "the insured" had knowledge. In its December 12, 2011 letter to Kitty O'Shea's, Seneca indicated that it would deny coverage if "the insured had knowledge of this suit or proceedings related to the default and failed to notify Seneca." [ECF No. 28-26].

11

papers received in connection with the claim or 'suit.'" Id. Tiede's argument that Kitty O'Shea's did not breach the insurance policy because its registered agent was not insured under the insurance policy is unavailing. Kitty O'Shea's was a named insured. Seneca Facts ¶ 1. Kitty O'Shea's received notice of the suit and is deemed to have acquired knowledge of it when its registered agent was served. See Mass. Gen. Laws ch. 156B, § 49 (a resident agent is a "true and lawful attorney upon whom all lawful processes in any action or proceeding against such corporation may be served"); DeVaux v. Am. Home Assur. Co., 444 N.E.2d 355, 358 (Mass. 1983) ("When an agent acquires knowledge in the scope of her employment, the principal, here the attorney, is held to have constructive knowledge of that information.").[7] Kitty O'Shea's breached the insurance policy's notice provision when it, or its agent, learned the critical details that should have enabled Seneca to defend the lawsuit in April 2011, but did not "see to it" that Seneca received written notice of the lawsuit. [ECF No. 28-4 at 14]. Kitty O'Shea's further breached the insurance policy by failing to provide Seneca various legal papers including the summons, complaint, and Motion for an Assessment of Damages Hearing until December 2, 2011, even after its officers received notice of the November 29, 2011 hearing on November 17, 2011. By December 2, 2011 when Seneca finally received the information that would have allowed it to appear and defend Tiede's lawsuit, the assessment of damages hearing had already

---

[7] Tiede argues that, although Kitty O'Shea's may have had constructive knowledge, it did not have actual knowledge until November 17, 2011. [ECF No. 38 at 12]. Further, Tiede claims that Seneca has admitted that it would have covered Kitty O'Shea's under the policy if it did not have *actual* knowledge. Id.; [see also ECF No. 37-6 at 166–67]. This alleged admission emerged only from the deposition questioner's misrepresentation of a contemporaneous document. The document at issue references the purported service of the complaint and summons and states, "In the event that the facts do indeed verify that the insured had knowledge of the suit or proceedings related to the default and failed to notify Seneca, this would constitute a breach the insured's duties as set forth in the commercial general liability conditions of the subject insurance policy." [ECF No. 37-16].

12

occurred. Tiede Facts ¶¶ 39–40. Kitty O'Shea's therefore failed to carry out its obligations to "notify [Seneca] as soon as practicable" of the suit, to "see to it that [Seneca] receive[d] written notice of the . . . 'suit,'" and to "[i]mmediately [send Seneca] copies of any demands, notices, summonses or legal papers received in connection with the . . . 'suit.'" [ECF No. 28-4 at 14].

These breaches resulted in actual prejudice to Seneca. The investigation report prepared by Mark Adjustment in March 2011 suggests that Seneca had strong grounds on which it could have defended Tiede's lawsuit. Seneca was deprived of the opportunity to assert those arguments as it did not receive the information necessary to appear and defend until after the default had entered and the assessment of damages hearing had occurred. Tiede makes three unavailing arguments that Seneca has not shown it was prejudiced.

First, Tiede argues that because Seneca was informed that Tiede's complaint had been filed, all Seneca had to do was settle or answer. [See ECF No. 38 at 13]. As discussed supra, Seneca cannot have been expected to answer, on behalf of Kitty O'Shea's, a complaint that it never received.

Second, Tiede argues that when Seneca received notice of the assessment of damages hearing after it occurred on November 29, 2011, it still had two business days to prevent the default judgment from bring entered. [See ECF No. 38 at 14].[8] In hindsight, Seneca perhaps should have proceeded directly to Court, rather than investigating, preparing a litigation strategy, seeking consent from Tiede to vacate the default, and then finally proceeding to court five months after the default judgment had been entered. It was not unreasonable, however, for Seneca to take more than two days to assess the situation, and considering the serious

---

[8] Seneca would not, in all likelihood, have had any way of knowing when the Court would enter the default judgment at the time.

investigation that Seneca undertook when Tiede's claim was initially reported and Seneca's nearly immediate retention of counsel after learning of the default, Seneca clearly would have arranged for a lawyer to appear for Kitty O'Shea's if it had received notice of the hearing.

Lastly, Tiede claims that Boyle v. Zurich American Insurance Co., 36 N.E.3d 1229, directs the result here, but Boyle in inapposite. [See ECF No. 38 at 14–15]. Boyle concerned an insurer who refused to defend a lawsuit brought against its insured because of the insured's failure to provide notice of the suit. See generally Boyle, 36 N.E.3d 1229. The SJC held that the insurer was obligated to attempt to defend the lawsuit where it received notice of the assessment of damages hearing from the plaintiff's attorney more than a month before it occurred. Id. at 1234, 1239. Here, Seneca did not have notice of the assessment of damages hearing before it occurred, in part because Tiede's attorneys did not provide notice. Seneca's position would have been significantly improved if it had been on notice of Tiede's lawsuit before the assessment of damages hearing.

Because Kitty O'Shea's breached the insurance policy and Seneca has shown that it suffered actual prejudice as a result, summary judgment on Count II is granted in favor of Seneca.

> **B.     Summary Judgment Is GRANTED in Favor of Seneca on Tiede's Claims Under Massachusetts Chapter 175, Sections 112 and 113 and Chapter 214, Section 3(9) (Count III).**

Tiede brings a claim for violation of Massachusetts Chapter 175, Sections 112 and 113 and Chapter 214, Section 3(9) that is distinct from his contract claim under the insurance policy. Tiede's summary judgment briefing does not, however, distinguish between the legal standard

applicable to his contract claim and that applicable to his statutory reach and apply claim. [See ECF No. 38].

Chapter 175, Section 112 provides in part:

> An insurance company shall not deny insurance coverage to an insured because of failure of an insured to seasonably notify an insurance company of an occurrence, incident, claim or of a suit founded upon an occurrence, incident or claim, which may give rise to liability insured against unless the insurance company has been prejudiced thereby.

Mass. Gen. Laws ch. 175, § 112. Chapter 175, Section 113 provides:

> Upon the recovery of a final judgment . . . for any loss or damage specified in [Section 112], if the judgment debtor was at the accrual of the cause of action insured against liability therefor, the judgment creditor shall be entitled to have the insurance money applied to the satisfaction of the judgment as provided in [Chapter 214 Section 3(9)].

Mass Gen. Laws ch. 175, § 113. Chapter 214, Section 3(9) vests Massachusetts courts with jurisdiction over:

> Actions to reach and apply the obligation of an insurance company to a judgment debtor under . . . any . . . policy insuring a judgment debtor against liability for loss or damage on account of bodily injury . . . in satisfaction of a judgment covered by such policy, which has not been satisfied within thirty days after the date when it was rendered.

Mass. Gen. Laws ch. 214, § 3. Although Tiede suffered bodily injury that would allow him to bring a "reach and apply" claim against Seneca under Section 3(9), there is no "insurance [to apply] to the satisfaction of [his default judgment]," because Seneca has proven that Kitty O'Shea's failure to "seasonably notify" caused prejudice, which allows it to deny coverage under Section 112. See Blair v. Travelers Ins. Co., 197 N.E. 60, 62 (Mass. 1935) ("If some defense exists, which would defeat an action on the [insurance] policy . . , [a] judgment creditor cannot reach the insurance, for there is no 'obligation' to be reached under the statute."). Therefore, for the reasons discussed <u>supra</u> at section III.A, summary judgment is granted for Seneca on Count III.

### C. Summary Judgment Is <u>GRANTED</u> in Favor of Seneca on Tiede's Claims Under Chapters 93A and 176D (Count I).

In addition to his claims under the insurance policy, Tiede initially claimed that Seneca violated Massachusetts Chapters 93A and 176D by failing to effectuate settlement once Kitty O'Shea's liability was reasonably clear, which compelled him to initiate litigation, to conduct a prompt and reasonable investigation, or to explain its coverage decisions to Tiede, and by preventing him from being able to satisfy the judgment against Kitty O'Shea's through an attachment. Tiede's summary judgment briefing abandons these claims except for Seneca's alleged failure to inform him that it had denied coverage and to make a reasonable settlement offer after liability became reasonably clear. [ECF No. 38 at 15–20].

Chapter 93A prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce." Mass. Gen. Laws ch. 93A, § 2(a). Chapter 176D contains a similar provision prohibiting "unfair or deceptive act[s] or practice[s] in the business of insurance" as defined or determined under the provisions of Chapter 176D. Mass. Gen. Laws ch. 176D, § 2. Chapter 176D specifically defines unfair claim settlement practices to include, *inter alia*:

> (f) Failing to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear; . . . or
> (n) Failing to provide promptly a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for denial of a claim or for the offer of a compromise settlement.

Mass. Gen. Laws ch. 176D, § 3(9). "A violation of [Chapter 176D Section 3(9)] . . . establishes a violation of [Chapter 93A] unless the injured party is 'engage[d] in the conduct of any trade or commerce.'" <u>Boyle</u>, 36 N.E.3d at 1240 (alteration in original). Although whether a course of conduct is unfair or deceptive under Chapter 93A is often a question of fact, taking "[a] plausible, reasoned legal position that may ultimately turn out to be mistaken—or simply . . . unsuccessful—is outside the scope of the punitive aspects of the combined application of c. 93A

16

and c. 176D." Guity v. Commerce Ins. Co., 631 N.E.2d 75, 77 (Mass. App. Ct. 1994). Viable claims under Chapter 176D will generally be supported by evidence from which a trier of fact could infer "an absence of good faith and the presence of extortionate tactics." Id.

With respect to the claim that Seneca failed to effectuate an equitable settlement in accordance with Chapter 176, Section 3(9)(f), Seneca argues that summary judgment should be granted because its liability for the default judgment has never been reasonably clear. [ECF No. 27 at 15–16]. For the reasons discussed supra, the Court agrees. Seneca was not required to effectuate a settlement under Chapter 176D, Section 3(9)(f).

With respect to Tiede's assertion that Seneca failed to provide a prompt and reasonable explanation for denial of the claim as required by Chapter 176D, Section 3(9)(n), even assuming that Tiede was entitled to an explanation for the denial of his claim, the Court finds this argument to be factually unsupported. From December 2011 through February 2014, Seneca operated under a reservation of rights and attempted to have the default judgment vacated so that it could then litigate Tiede's claims on their merits. Seneca Facts ¶¶ 48–65. Seneca's attempts to vacate the default judgment and its subsequent appeal, although flawed in execution, were undertaken pursuant to its duty to defend Kitty O'Shea's until actual prejudice could be proven. See Mass. Gen. Laws ch. 175, § 112 ("An insurance company shall not deny insurance coverage to an insured because of failure of an insured to seasonably notify an insurance company of an occurrence, incident, claim or of a suit . . . unless the insurance company has been prejudiced thereby."); Boyle, 36 N.E.3d at 1235 ("It is well settled in [Massachusetts] that a liability insurer owes a broad duty to defend its insured against any claims that create a potential for indemnity."). On February 4, 2014, the day after the SJC denied the request for further appellate review, Seneca advised both Kitty O'Shea's and Tiede that it was disclaiming liability under the

17

policy based on substantially the same rationale adopted by the Court today. Seneca Facts ¶¶ 66–67; [see also ECF Nos. 28-37, 28-38]. Seneca thereby met any obligation it had to promptly notify Tiede of its coverage denial and provide a reasonable explanation.[9]

Because Seneca's liability for the default judgment never became reasonably clear, and because Seneca provided Tiede with a reasoned explanation for the denial of his claim the day after its efforts to vacate the default judgment concluded, Seneca has shown that it did not engage in an unfair or deceptive act or practice in failing to provide a more significant settlement offer or an earlier explanation for its denial of coverage. Summary judgment is therefore granted in favor of Seneca on Count I.

### D. Declaratory Judgment

Seneca seeks a declaratory judgment that the insurance policy does not cover or indemnify Kitty O'Shea's and an award of costs. Under 28 U.S.C. § 2201, "[i]n a case of actual controversy within its jurisdiction," this Court "may declare the rights and other legal relations of any interested party seeking such declaration." The Court declares that Seneca is not liable to Plaintiff Mark Tiede under Seneca Specialty Insurance Company Policy No. SGL3100638 for the December 6, 2011 default judgment entered by the Superior Court against James Joyce, Inc. d/b/a Kitty O'Shea's.

---

[9] To the extend Tiede is arguing that he was entitled to a reservation of rights letter during the pendency of his litigation against Kitty O'Shea's, the Court disagrees. As Massachusetts courts have observed, "a reservation of rights . . . preserve[s] [an insurer's] rights to later disclaim coverage, . . . while at the same time giving the insured notice of a potential problem so the insured is not lulled into failing to act to protect himself." Thach v. Safety Ins. Co., No. 9802300, 1999 WL 791958, at *2 (Mass. Super. Ct. Aug. 27, 1999) (citing Sarnafil, Inc. v. Peerless Ins. Co., 636 N.E.2d 247, 252 (Mass. 1994)). Tiede should have been well-aware that Seneca did not consent to pay his claim because rather than writing a check, it litigated the claim.

## IV.  CONCLUSION

Accordingly, Seneca's Motion for Summary Judgment [ECF No. 26] is <u>GRANTED</u> on all counts.  Tiede's Cross Motion for Summary Judgment [ECF No. 36] is <u>DENIED</u>.  Seneca is <u>DECLARED</u> not liable for the December 6, 2011 default judgment obtained by Plaintiff Mark Tiede.  The parties shall bear their own costs.

**SO ORDERED.**

March 15, 2019                                                                 <u>/s/ Allison D. Burroughs</u>
                                                                                              ALLISON D. BURROUGHS
                                                                                              U.S. DISTRICT JUDGE